Jeffrey I. Carton (JC-8296)
Robert J. Berg (RB-8542)
DENLEA & CARTON LLP
2 Westchester Park Drive, Suite 410
White Plains, NY 10604
(914) 331-0100
jcarton@denleacarton.com
rberg@denleacarton.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| ADAM SORGENTI, on behalf of himself and all others similarly situated, | Civil Action No. 7:16-cv-6295 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| -against- | **JURY TRIAL DEMANDED** |
| EIGHT O'CLOCK COFFEE COMPANY, | |
| Defendant. | |

_____

Plaintiff Adam Sorgenti, by and through his counsel, Denlea & Carton LLP, respectfully files this Class Action Complaint on behalf of himself and a class of similarly-situated individuals who have purchased specialty coffee bags of Eight O'Clock Coffee manufactured and/or marketed by Eight O'Clock Coffee Company, and alleges as follows:

**NATURE OF THE CASE**

1.      Few sights in American supermarkets are more familiar than the red metallic bags of Eight O'Clock Coffee. In 1859, the Great Atlantic & Pacific Tea Company ("A&P") opened with a single tea store in New York. Others followed in the next decade, and whole bean coffee was one of A&P's signature products. In 1919,

George Huntington Hartford, the brother of A&P founder John Hartford, surveyed his friends and employees as to what time of day they preferred to drink their coffee. He learned that 8:00 a.m. and 8:00 p.m. were the most popular times, and as a result, A&P began selling its coffee under the Eight O'Clock brand. A&P developed a clever advertising campaign based on the fact that it's always eight o'clock somewhere in the world.

2. During the 1920s, before the advent of inexpensive freeze-dried coffee, Eight O'Clock Coffee was the number one coffee brand in the United States. That reign lasted for thirty years. In 1933, the very first "spectacular" billboard was erected by famed advertising and lighting guru, Douglas Leigh, in Times Square. That iconic billboard featured a giant 25 foot tall cup of Eight O'Clock Coffee giving off real steam, and was a Times Square landmark for decades.

3. In 1979, A&P began selling Eight O'Clock Coffee outside of its supermarkets. The well-known brand quickly penetrated the market, and was sold in supermarkets, convenience stores, colleges, university food systems, restaurants, mass merchandisers, and drug store chains.

4. In 2003, Eight O'Clock Coffee introduced its ground coffee products, and the brand became independent of A&P. In 2006, Eight O'Clock Coffee was purchased by the Tata Group, an Indian multinational conglomerate holding corporation, and now operates within Tata Global Beverages ("Tata"). Tata is a leading global natural beverage company and the second largest tea company in the world.

5. Eight O'Clock Coffee is an iconic American brand, and is the fifth largest selling coffee brand in the United States (by volume). For more than 150 years, Eight

O'Clock Coffee has been sold to generations upon generations of consumers in the United States, and especially in the New York area.

6. Eight O'Clock Coffee's hallmark product, Eight O'Clock The Original – its roast of 100% Arabica beans -- is instantly recognizable to millions of American consumers, packaged as it is in a red flexible metallic, sealable, non-transparent bag. This standard dimension bag is approximately 7 1/2 inches tall, 4 inches wide, and 2 ½ inches deep.  For decades, the net weight of the coffee included in this standard dimension bag has been 12 ounces. Because these bags are not transparent, consumers are unable to determine visually how filled the boxes are.

7. Eight O'Clock Coffee also sells a wide variety of other coffees besides its iconic "The Original" – "where the legend began."  These coffees include, in Eight O'Clock's "Beginnings" line of products: Dark Italian Espresso, Dark Italian Roast, French Roast, the Original Decaf, and 50% Decaf.  In its "Explorations" line, Eight O'Clock Coffee offers 100% Colombian Peaks, Central Highlands, and African Plains. In its "Expressions" line, Eight O'Clock Coffee offers Hazelnut, French Vanilla, Caramel Macchiato, The Chocolate Mint, and The Dark Chocolate.

8. These products are generally packaged in virtually identical red flexible metallic, sealable, non-transparent bags as The Original is packaged in.  These standard dimension bags are approximately 7 1/2 inches tall, 4 inches wide, and 2 ½ inches deep.  For all intents and purposes, each bag of coffee (regardless of its flavor or variety) looks the same to consumers.

9. Consequently, consumers have come to rely upon Eight O'Clock Coffee's "standard size" packaging when making purchasing decisions, particularly because the

3

contents were and are not fully visible in the non-transparent red metallic bags.

10. Eight O'Clock The Original, in its standard size packaging is filled with 12 ounces net weight of coffee beans. Consumers have come to expect that they will receive 12 ounces net weight of coffee when they buy Eight O'Clock Coffee in the standard sized packaging, whatever variety they purchase. But rather than fill these visually identical-size bags with the same quantity of coffee --12 ounces (net weight) per bag -- that customers have long been accustomed to receiving, Eight O'Clock Coffee has reduced the contents of the bags for certain of its varieties by 8 1/3 percent, and under filled the bags with only 11 ounces (net weight) of coffee. For two other specialty varieties, Eight O'Clock Coffee fills the bags with 11.5 ounces (net weight) of coffee, underfilling them by 4.2%. By doing so, Eight O'Clock Coffee has been able to deceive consumers and secretly impose a price premium on the sale of many of its coffee bags.

11. On store shelves, a number of different varieties of Eight O'Clock Coffee bags are stacked next to the traditional Eight O'Clock Coffee The Original, and to a consumer, they appear to be the same size. Thus, reasonable consumers are led to believe that they are buying the same amount of coffee when they buy the specialty varieties of Eight O'Clock Coffee as when they buy bags of the traditional Eight O'Clock Coffee The Original which contain 12 ounces of coffee.

12. Eight O'Clock Coffee uses the traditional-sized bags that have been recognized by consumers for ages for its traditional Eight O'Clock Coffee The Original products, and fills them with 12 ounces net weight of Eight O'Clock Coffee The Original product. Eight O'Clock Coffee, however, also uses the same traditional-sized bags that have been recognized by consumers for generations for its specialty coffee blends, but

4

only fills them with 11 ounces or 11.5 ounces net weight of product.

13. More specifically, in its "Beginnings" line, Eight O'Clock Coffee sells The Original, French Roast, The Original Decaf, and 50% Decaf in its traditional-sized bags filled with 12 ounces of coffee product. Eight O'Clock Coffee sells Dark Italian Espresso and Dark Italian Roast in those same sized bags, but only fills them with 11.5 ounces of coffee product.

14. In its "Explorations" line, Eight O'Clock sells its 100% Colombian Peaks, Central Highlands, and African Plains products in its traditional-sized bags, but fills them with only 11 ounces of coffee product.

15. Similarly, in its "Expressions" line, Eight O'Clock sells its Hazelnut, French Vanilla, Caramel Macchiato, The Chocolate Mint, and The Dark Chocolate products in its traditional-sized bags, but fills them with only 11 ounces of coffee product.

16. Although the bags containing Eight O'Clock Coffee's variety of flavors each set forth the actual net weight of product in small print on the bottom of the bag, consumers are not otherwise informed that the amount of coffee product contained in the bags is up to 8 1/3 percent less by net weight than the amount of coffee product contained in the same-sized bags containing the traditional Eight O'Clock Coffee products such as The Original.

17. Rather, Eight O'Clock Coffee counts on consumers' familiarity with its traditional-sized coffee bags, garnered over many decades of marketing, to deceive consumers into thinking that they are purchasing the same quantity of coffee as they always have when they are buying the specialty Eight O'Clock Coffee products. And, in many instances, the different varieties of coffee being offered for sale are sold at

5

exactly the same price. In reality, however, Eight O'Clock Coffee is filling these bags with up to 8 1/3 percent less coffee (by weight). Eight O'Clock Coffee is thus able to increase its sales by appealing to consumers' desire for new and different coffee products, while increasing its profit margins by filling its bags with up to 8 1/3 percent less product than is contained in the same-dimension bags for its Original coffee products. Or stated otherwise, Eight O'Clock Coffee is able deceptively to charge a higher price for its specialty coffee products than it charges for its traditional offering.

## THE PARTIES

18.    Plaintiff is a natural person of full age of majority who is domiciled and resides in New Windsor, New York. Plaintiff has purchased Eight O'Clock Coffee The Original, packaged in its iconic red flexible metallic bag, numerous times over many years, including recently. These bags contain 12 ounces of The Original coffee product. Over the past several years, Plaintiff also has purchased identical dimension standard-size bags of Eight O'Clock Hazelnut and Central Highlands coffee, expecting them to contain approximately 12 ounces net weight of coffee product. Plaintiff made these purchases at the Shop Rite grocery stores located in the New Windsor, New York area. Plaintiff has subsequently learned that the bags of Eight O'Clock Hazelnut and Central Highlands coffee actually contained only approximately 11 ounces net weight of coffee product.

19.    Defendant Eight O'Clock Coffee is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 155 Chestnut Ridge Road, Montvale, New Jersey. Eight O'Clock Coffee is a wholly-owned subsidiary of Consolidated Coffee Company, a U.S. subsidiary of India-based

Tata Coffee Limited, which is owned by Tata Global Beverages, one of the world's leading tea, coffee, and natural water companies. Tata Global Beverages itself is part of the Tata Group, a multinational conglomerate holding company based in Mumbai, India.

20. Eight O'Clock Coffee products are sold through a variety of distribution channels and sales outlets throughout the United States as well as in the State of New York, including through supermarkets, mass merchandisers such as Walmart and Target Stores, grocery stores, convenience stores, club stores, supercenters, and drug stores.

## JURISDICTION AND VENUE

21. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Jurisdiction is proper because (1) the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs and (2) the named Plaintiff and the Defendant are citizens of different states. 28 U.S.C. §1332(d)(2)(A).

22. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because a substantial part of the events giving rise to the claim occurred within this judicial district and because Defendant has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

## CHOICE OF LAW

23. New York law governs the state law claims asserted herein by Plaintiff and a class of New York residents who purchased the Eight O'Clock Coffee products at issue because Defendant's acts and omissions described herein were implemented in

the State of New York through Defendant's marketing and sales of its products within the State of New York.

24.    New York has a substantial interest in protecting the rights and interests of New York State residents against wrongdoing by companies which market and distribute their products within the State of New York.

## GENERAL ALLEGATIONS

25.    As alleged above, Eight O'Clock Coffee is synonymous with its use of iconic packaging, consisting of red flexible metallic sealable bags which are non-transparent.  These packages historically had been filled with 12 ounces (net weight) of Eight O'Clock Coffee product.

26.    But when Eight O'Clock Coffee expanded its product line with a wide variety of specialty blends, Eight O'Clock Coffee filled those same-dimensioned bags with substantially less coffee than before – i.e., 11 ounces or 11.5 ounces (net weight) of coffee product rather than the 12 ounces (net weight) that always was and continues to be filled in the same dimensioned bags of Eight O'Clock Coffee's traditional The Original coffee products.

27.     As a consequence, consumers are being misled into believing that they are buying a larger volume of Eight O'Clock Coffee's specialty coffee products than is actually contained in the bags.  And more significantly, consumers are unwittingly paying substantially more per ounce for the Eight O'Clock Coffee specialty coffee product alternatives, allowing Eight O'Clock Coffee to collect a premium that it is otherwise failing to disclose to consumers.

28.    For example, ShopRite is currently selling Eight O'Clock The Original

coffee in its traditional red metallic bag, net weight 12 ounces, for $5.99 – which translates to approximately 50 cents per ounce.  At the same time, ShopRite is selling both Eight O'Clock Hazelnut and Eight O'Clock Central Highlands coffee in its traditional red metallic bag, net weight 11 ounces, for the same $5.99 – which amounts to approximately 54 cents per ounce. Yet consumers, seeing the three Eight O'Clock coffee products together on the grocery store shelf, are easily misled into believing that they are buying the same volume of coffee regardless of which bag they purchase.

29.    Unless consumers carefully study the net weight number set forth in small print on the front of the bag – and somehow realize that they are no longer receiving the same quantity of Eight O'Clock Coffee as before – consumers are being misled by Eight O'Clock Coffee's deceptive practice of under filling its specialty coffee bags into paying a price premium for the specialty coffee alternatives.  Rather than provide consumers with the same 12 ounces of product and charge a higher price for the specialty coffee alternatives, Defendant is deceptively keeping the price the same, and reducing the contents of the bag.  The net result is that Eight O'Clock Coffee is able to collect the premium it desires by deceiving consumers who reach for the same size bag they are accustomed to purchasing.

30.    As a result of Eight O'Clock Coffee's misleading and deceptive use of its traditional-sized, non-transparent red metallic bags, and substantially underfilling them with specialty coffee products, Plaintiff and consumers have purchased bags of Eight O'Clock Coffee specialty coffee which contain substantially less (up to 8 1/3% less) coffee than Plaintiff and consumers had previously received in the identical sized bags. Plaintiff and the class have been damaged thereby.

## CLASS ACTION ALLEGATIONS

31. Applying New York substantive law, Plaintiff seeks to be appointed as class representative of a New York class composed of and defined as follows:

> All persons who bought any of the following varieties of Eight O'Clock Coffee: Hazelnut, French Vanilla, Caramel Mocchiata, The Chocolate Mint, The Dark Chocolate, 100% Colombian Peaks, Central Highlands, African Plains, in bags filled with 11 ounces (net weight) of coffee rather than 12 ounces (net weight) of coffee or Dark Italian Espresso or Dark Italian Roast, in bags filled with 11.5 ounces (net weight) of coffee rather than 12 ounces (net weight) of coffee, and did not resell them. Excluded from the Class are the Defendant and any Judge presiding over this matter and the members of his or her immediate family. Also excluded from this class are the legal representatives, heirs, successors, and attorneys of any excluded person or entity, and any person acting on behalf of any excluded person or entity.

32. As to the above class, this action is appropriately suited for a class action. Plaintiff is informed, believes, and thereon alleges, that the Class is sufficiently numerous such that a class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all purchasers of such bags of Eight O'Clock Coffee is impractical.

33. This action involves questions of law and fact common to the Class. In marketing the bags of Eight O'Clock Coffee specialty coffees, Defendant has engaged in a systematic course of misrepresenting the products to consumers. Such common issues of law and fact include, but are not limited to:

- Whether the filling of traditional sized bags of Eight O'Clock Coffee specialty coffees with substantially less (up to 8 1/3% less) coffee than is contained in the traditional 12 ounces bags was and is likely to mislead consumers;

- Whether Defendant represented that the bags of Eight O'Clock Coffee specialty coffees were of a particular standard or quality or net weight when they were not;

- Whether, as a result of Defendant's misconduct, the Class is entitled to equitable and injunctive relief;

- Whether the Class members obtained the benefit of their bargain in purchasing bags of Eight O'Clock Coffee specialty coffees;

- Whether, as a result of Defendant's misconduct, the Class is entitled to damages.

34. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and available remedies.

35. Plaintiff's claims are typical of the claims of members of the Class, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff purchased Eight O'Clock Coffee specialty coffees and suffered an injury-in-fact as a result of Defendant's conduct, as did all Class members who purchased any bags of Eight O'Clock Coffee products containing the reduced net weight of coffee.  Plaintiff's interests are coincident with and not antagonistic to those of the other members of the Class. Plaintiff is represented by counsel who is competent and experienced in the prosecution of consumer class action litigation.

36. A class action is superior to other methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated purchasers of the Eight O'Clock Coffee specialty coffee products to adjudicate simultaneously their common claims in a single forum in an efficient manner, and without the duplication of effort and expense that numerous individual actions would engender.  Class treatment also will permit the adjudication of relatively small claims by many members of the Class who could not afford individually to litigate the claims pleaded in this Complaint. There are no difficulties likely to be encountered in the

11

management of this class action that would preclude its maintenance as a class action.

### FIRST CAUSE OF ACTION
### (Violation of New York General Business Law Section 349)

37. On behalf of himself and the members of the New York Class, as defined in Paragraph 31 above, Plaintiff hereby realleges, and incorporates by reference as though set forth fully herein, the allegations contained in Paragraphs 1 through 36.

38. By reducing the net weight of the specialty coffees contained in Eight O'Clock Coffee's traditional-size non-transparent red metallic bags, Defendant has engaged in an unfair and deceptive business practice that has the capacity, tendency, and effect of deceiving reasonable consumers who purchase the products. Reasonable consumers would believe that the same traditional-size red metallic bags of Eight O'Clock Coffee's specialty coffees would contain the same quantity (net weight) of coffee as the traditional-size red metallic bags of Eight O'Clock Coffee The Original that they have purchased for decades.

39. Defendant knew, or should have known, that by under filling its traditional-sized bags of specialty coffee with substantially less quantity (net weight) of specialty coffee, consumers would be misled into purchasing a substantially lesser quantity of specialty coffee and would unknowingly pay a premium in connection with their purchase.

40. Plaintiff and the Class have been aggrieved and have suffered losses as a result of Defendant's violations of Section 349 of the New York General Business Law. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff and the members of the Class have been substantially injured in the amount of the purchase prices for the Eight O'Clock Coffee specialty

coffee bags that they paid, or, in the alternative, have been damaged by paying more for the Eight O'Clock specialty coffees that they purchased.

41. Defendant continues to violate Section 349 of the New York General Business Law, and continues to aggrieve the members of the Class.

42. By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and Defendant is liable to Plaintiff and the Class for the actual and/or statutory damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus treble damages, and attorneys' fees and costs.  Plaintiff further demands injunctive relief enjoining Defendant from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Section 349 of the New York General Business Law.

## SECOND CAUSE OF ACTION
### (Violation of New York's General Business Law Section 350)

43. On behalf of himself and the members of the New York Class, as defined in Paragraph 31 above, Plaintiff hereby realleges, and incorporates by reference as though set forth fully herein, the allegations contained in Paragraphs 1 through 42 above.

44. New York's General Business Law Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service."

45. Section 350 defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment

opportunity if such advertising is misleading in a material respect." The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity…to which the advertising relates."

46. Defendant's packaging, labeling, marketing, and advertising of Eight O'Clock Coffee specialty coffee products are "misleading in a material respect," and thus constitute "false advertising," because by packaging the specialty coffee products in the same dimension, iconic non-transparent red metallic bags as its traditional Eight O'Clock The Original coffee, but filling those bags of specialty coffee products with only 11 ounces or 11.5 ounces (net weight) of specialty coffee as compared to filling those same dimension bags with 12 ounces (net weight) of specialty coffee, as it does with its traditional The Original coffee products, Defendant falsely represents the quantity of specialty coffee products that are contained in the bags.

47. Defendant continues to violate Section 350 of the New York General Business Law, and continues to aggrieve the members of the Class.

48. By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and Defendant is liable to Plaintiff and the Class for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

49. Plaintiff further demands injunctive relief enjoining Defendant from continuing to engage in, use, or employ any act, including advertisements, packaging,

or other representations, prohibited by Section 350 of the New York General Business Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

1. Certifying this action as a class action as soon as practicable, with the class as defined above, designating Plaintiff as the named class representative, and designating the undersigned as Class Counsel.

2. On Plaintiff's First Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus treble damages.

3. On Plaintiff's Second Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus treble damages.

4. Awarding Plaintiff and the Class interest, costs, and attorneys' fees.

5. Enjoining Defendant from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Sections 349 and 350 of the New York General Business Law.

6. Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:   White Plains, New York
         August 9, 2016

>                                    Respectfully Submitted,
>
>                                    /s/ Jeffrey I. Carton
>                                    DENLEA & CARTON LLP
>                                    Jeffrey I. Carton, Esq. (JC-8296)
>                                    Robert J. Berg, Esq. (RB-8542)
>                                    2 Westchester Park Drive, Suite 410
>                                    White Plains, New York 10604
>                                    Telephone: (914) 331-0100
>                                    Facsimile: (914) 331-0105
>                                    jcarton@denleacarton.com
>                                    rberg@denleacarton.com